UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR.  08-30052-02-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING |
| vs. | ) | MAGISTRATE JUDGE'S |
| | ) | REPORT AND |
| EVER DAVID GRANADOS, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

Defendant, Ever David Granados, is charged with one count of conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Docket 1.  He moves to suppress all evidence obtained following the entry and search of his hotel room and his father's vehicle on June 14, 2008, all statements made to law enforcement agents on June 14, 2008, and testimony concerning a photo lineup conducted by law enforcement agents on June 16, 2008.  Docket 39.

The court referred the motion to suppress to Magistrate Judge Mark A. Moreno pursuant to 28 U.S.C. § 636(b)(1)(B).  The magistrate judge recommends that this court deny Granados' motion to suppress.  Granados objects to the magistrate judge's factual and legal findings supporting his conclusion that officers had probable cause to arrest Granados and that exigent circumstances justified the warrantless entry into Granados' hotel room to arrest him.  Granados also objects to the magistrate judge's finding that he voluntarily consented to the search of his hotel room and his father's

vehicle.  Granados further objects to the magistrate judge's recommendation that his statements to law enforcement officers not be suppressed.  Finally, Granados objects to the magistrate judge's finding that there were no differences in appearance in the photo lineup that tended to isolate the picture of Granados.  Docket 51.  The government has no objection to the magistrate judge's report and recommendation.

## STANDARD OF REVIEW

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); see also United States v. Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995).  28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.; see also Fed. R. Civ. P. 72 (b).  After a de novo review of the magistrate judge's report and recommendation and a review of the record, the court adopts the report and recommendation of the magistrate judge as supplemented herein.

## DISCUSSION

### I.     Background

Granados' motion to suppress arises out a controlled delivery of cash involving a confidential informant (CI).  On June 14, 2008, officers learned that the CI would be meeting his alleged source of marijuana, Gonzalo Morales, at the Kelly Inn in Pierre, South Dakota, to give Morales money owed for a previous delivery of marijuana.  A task force of FBI agents and Pierre Police Department officers (the task force) observed the CI and Morales meet in a Ford Expedition in the Kelly Inn parking lot.  When the CI and Morales exited the Expedition, members of the task force arrested Morales, went to Granados' hotel room, entered without a warrant, and arrested Granados.  Agents later searched the hotel room and vehicle and questioned Granados pursuant to written consent forms signed by Granados.  A photo array containing Granados' picture was presented to the CI on June 16, 2008.  The court will discuss the facts in more detail as they relate to Granados' specific grounds to suppress evidence and statements.

### II.    Warrantless Entry and Arrest

Granados objects to the magistrate judge's finding that probable cause and exigent circumstances justified the warrantless entry into Granados' hotel room and the arrest of Granados. Granados argues with each of the facts the magistrate judge set out in support of his conclusion.  The court has conducted a de novo review of the record and determines that the evidence supports a

3

finding of probable cause and exigent circumstances.  As a result, it is unnecessary for the court to address many of Granados' disagreements with the magistrate judge's factual findings, but the court will address Granados' objections that relate to facts and evidence relied on by the court.

### A.    Events Leading to Warrantless Entry and Arrest

After learning from the CI that Morales was traveling to Pierre to collect payment, the task force held a briefing meeting to plan surveillance of the controlled delivery.  The task force believed that another person was involved on Morales' side of the transaction.  The CI had previously informed Division of Criminal Investigation Agent Jason Baldwin that Morales had worked with several other individuals in the past.  Further, in the first of two FBI-monitored phone calls between the CI and Morales earlier that day, Morales spoke as if another person were traveling with him.  Morales twice told the CI, "we will wait for you" at the hotel.  Morales also stated that it would be better if "we go get the [hotel] room" and that he would tell the CI "where we're at" after getting the room.  Near the end of the conversation, he confirmed that "we'll" get the hotel room.  The task force planned to arrest Morales' associate as soon as possible after the CI and Morales completed the transfer of money and exited the vehicle.  The task force also discussed safety concerns in the upcoming transaction.  The CI indicated that Morales had been seen with three guns and a knife in the past and had visited the CI's family looking for his money.

4

After the briefing meeting, Detective Troy Swenson and Special Agent Guy DiBenedetto set out to locate the vehicle Morales was traveling in.  They observed a green SUV with out-of-state license plates traveling north on Highway 83 through Fort Pierre.  They conducted a license check and learned that the vehicle was registered to David Granados of Albuquerque, New Mexico. Swenson testified that he could not see how many people were in the vehicle, but DiBenedetto testified that he could see at least two people.  Granados argues that the officers' testimony is contradictory.  But the court finds that because Swenson and DiBenedetto viewed the vehicle from different vantage points, the testimony of one that he could not see how many people were in the vehicle is not inherently contradictory with the testimony of the other that he could see two people.  Although the testimony differs, it is not contradictory, and the credibility of both officers remains intact.

The task force set up surveillance at the Kelly Inn and observed the CI and Morales enter and hold a meeting in the Expedition, which was the same vehicle that Swenson and DiBenedetto had observed driving in Fort Pierre.  The task force used an electronic transmitting device to listen in on and record the CI and Morales' conversation.  Morales again spoke in the plural.  He indicated that while he needed rubber bands to sort and separate the cash, "we take even ones."  Later, he indicated that he wanted more buyers, saying "[w]e've got to do it."  He explained that "this guy, my brother, and I are working together." He went on, "[t]he more we do is better.  Right now we are starting. . . . We

5

need more people every time."  At the end of the conversation, Morales told the CI to call him when the person with the rest of the money arrived:  "[t]hat way we are ready for you to be back."  When the CI and Morales exited the vehicle, Morales was arrested and the CI was escorted from the scene.  No drugs or weapons were found on Morales.

Immediately after arresting Morales, members of the task force went to Room 250, the room Morales had told the CI he was staying in.  A member of the task force obtained a key to Room 250 from the Kelly Inn front desk. Special Agent James Van Iten testified that he smelled burnt marijuana in the hallway near Room 250, but he was not able to determine from where the smell came.  Swenson testified that the odor was very strong in front of Room 250.[1] When officers reached Room 250, the door to the room was closed.  Swenson used the key card to open the door and enter the room without knocking.  The officers handcuffed Granados and took him to a squad car in a secure area. Officers did not have a search warrant for the hotel room, an arrest warrant for Granados, or consent to enter the hotel room.

_____

[1]Granados argues that it is questionable from Swenson's testimony whether he perceived the strong odor of marijuana near Room 250 before he opened the door or after he had already entered the room.  The court finds Swenson's testimony clear that the odor of marijuana was evident in the hallway and stronger outside the closed door of Room 250.  Further, the fact that Van Iten was unable to determine where the odor was coming from does not undermine Swenson's credibility.  Swenson spent more time in the hallway before entering Room 250 than did Van Iten because Swenson was the first officer to reach Room 250 and Van Iten was fourth in line.  Therefore, Swenson was in a better position to determine the source of the odor.

Van Iten testified that the task force entered Room 250 immediately after arresting Morales rather than securing the room and obtaining a search warrant based on safety concerns.  Morales had been seen with firearms and a knife in the past, and the task force was concerned that Morales' associate in the hotel room would witness or receive a signal that Morales was arrested. Baldwin testified that he was concerned about safety because the suspects were unknown individuals, Morales had located the CI's family, and the controlled transfer took place on a Saturday evening while hotel patrons and employees were moving about in the hotel and parking lot and numerous civilians were watching a motorcycle event outside.

### B.    Granados' Hearsay Objection

Granados objects to the following evidence on hearsay grounds: information relied upon in the briefing meeting, testimony regarding text messages between Morales and the CI, and the statements made by them on the telephone and in the Expedition.  It is unclear whether Granados objects to the introduction of hearsay evidence at the suppression hearing or to the task force's use of hearsay evidence to justify the warrantless entry and arrest.  In either case, Granados' objection is unavailing.

At a suppression hearing, the court may rely on hearsay evidence that would not be admissible at trial.  United States v. Thompson, 533 F.3d at 964, 969 (8th Cir. 2008); see also Fed. R. Evid. 104(a) (stating that the court "is not bound by the rules of evidence except those with respect to privileges" when

determining whether evidence is admissible during suppression hearing).
Further, probable cause determinations generally may be based on hearsay.
United States v. Leppert, 408 F.3d 1039, 1042 (8th Cir. 2005).  When probable
cause is based on statements by an informant, the critical inquiry is the
informant's reliability.  "An informant's tip may be sufficiently reliable to
support a probable-cause determination if the informant has previously
provided reliable information or if the tip is corroborated by independent
evidence."  Id. at 1041 (internal quotation omitted).  Tips from an informant are
entitled to greater weight where they include an "explicit and detailed
description of alleged wrongdoing, along with a statement that the event was
observed firsthand" or include statements against the informant's penal
interests.  Id. at 1042.

Here, the probable cause to arrest Granados was based in part on
statements from the CI.  The court finds that the information provided by the
CI was reliable.  The CI's information that Morales and an unnamed associate
were traveling to South Dakota to collect a drug debt was corroborated by the
recordings of the phone conversations between Morales and the CI and the fact
that Morales actually met with the CI at the Kelly Inn.  The CI's statements
about past encounters with Morales and his associates were reliable because
the CI was involved in the interactions and therefore observed them first-hand
and because his description of the drug transactions implicated himself in
criminal activity.  The CI's statement that Morales had visited his family to seek

8

payment of the drug debt was corroborated by the fact that Morales contacted the CI and drove to South Dakota to collect the money.  Finally, the evidence of statements made by Morales and the CI during the controlled transfer in the Expedition was reliable because the task force listened in on the conversation as it was happening.  The information provided by the CI was reliable enough to support a finding of probable cause and was properly considered by the magistrate judge.

### C.    Legality of the Entry and Arrest

Officers may not effect a warrantless arrest of a suspect in his hotel room unless the arrest and entry are supported by probable cause and exigent circumstances.  United States v. Clement, 854 F.2d 1116, 1118-19 (8th Cir. 1988).  The court determines the existence of probable cause by looking at the "totality of the circumstances as set forth in the information available to the officers at the time of arrest."  United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003).  "The . . . court may consider the collective knowledge and information of all the officers involved." United States v. Marin-Cifuentes, 866 F.2d 988, 990 (8th Cir. 1989) (internal quotation omitted).  "[P]robable cause existed at the time of the arrest where the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." Kelly, 329 F.3d at 628.  The Eighth Circuit has found exigent circumstances where a warrantless entry is necessary to protect the lives of individuals, to prevent a

9

suspect from escaping, or to prevent the destruction of evidence.  Clement, 854 F.2d at 1119.

The court finds that both probable cause and exigent circumstances existed when members of the task force entered Room 250 and arrested Granados without a warrant.  At that time, agents knew that an unidentified third person had traveled from out of state with Morales, who had just been arrested for receiving over $3,000 in payment for a past delivery of marijuana. The following facts gave officers reason to believe that a third person was traveling with Morales and was involved in Morales' drug activity: the CI reported that he had interacted with at least one other person while conducting drug transactions with Morales in the past; while driving to Pierre, Morales told the CI that "we" will get a hotel room and wait for the CI there; DiBenedetto saw two people in the vehicle Morales was traveling in; the vehicle was registered to a person of the name "David Granados;" and Morales stated to the CI during the controlled transaction in the Expedition that "we" take one dollar bills, "we" are just starting out in the business and need more people, and that the CI should call when the person with the rest of the money arrived so that "we are ready for you to be back."  Further, as members of the task force approached Room 250, they smelled burnt marijuana in the hallway.  At least one detective perceived the odor to be stronger right outside Room 250.

"The cumulative effect of this information provides a more than adequate basis for finding probable cause."  Kelly, 329 F.3d at 628.  The facts that a

10

third person had traveled to South Dakota with a known drug trafficker and was possibly waiting in the hotel room, that a third person owned the vehicle in which a transaction of drug money had taken place, that a third person had been involved in Morales' drug transactions in the past, and that the odor of burnt marijuana emanated from Room 250 are sufficient to warrant a person of reasonable caution to believe a person who may have been in Room 250 was involved in the distribution of marijuana.

Granados argues that the task force lacked probable cause to arrest him because it did not have any information linking him specifically to the drug trafficking, weapons, and contact with the CI's family.  He asserts that the evidence does not show that he was involved in the transaction between Morales and the CI or that he knew that Morales was traveling to South Dakota to collect a drug debt.  Granados also argues that any reference to "we" by Morales logically referred to Morales and his brother.  These arguments go to the sufficiency of the evidence against Granados on the charges against him, not to whether the officers had probable cause to enter the hotel room and arrest Morales' suspected associate.  The task force did not need to know the identity of the person traveling with Morales for there to be probable cause that the person was involved with drug trafficking.  Taken as a whole, the facts known to the members of the task force were sufficient for the officers to reasonably believe that the individual traveling with Morales, be he Morales'

11

brother or an unknown person, was knowingly involved in a conspiracy to distribute marijuana.

Exigent circumstances also supported the warrantless entry into Granados' hotel room.  The task force reasonably believed that it was necessary to immediately arrest the person traveling with Morales to protect public safety.  Morales was known to have had guns and a knife in the past, and no weapons were found on his person or in the Expedition after he was arrested.  Morales had located and visited the CI's family seeking payment for a past delivery of marijuana.  The controlled transaction took place on a Saturday evening while hotel guests and employees were moving about the hotel and parking lot and civilians were sitting alongside the street near the Kelly Inn to watch a motorcycle event.  Further, based on the facts set out above, members of the task force had reason to believe that a third person was traveling with Morales and was waiting for him in Room 250.  It was reasonable to assume that the third person may have been watching the transaction and arrest from his hotel room or was alerted by Morales' failure to return with the money that something had gone wrong.  See United States v. Padilla, 869 F.2d 372, 379-80 (8th Cir. 1989) (arrestee's failure to communicate with suspect may have signaled that the deal had gone sour).  The task force was justified in entering Granados' room without a warrant because of its reasonable belief that it was necessary to protect the general public, hotel guests and employees, the CI's

family, and the officers and agents themselves from a possible violent action from Morales' associate.

Granados argues that there was no special urgency for the task force to enter Room 250 without a warrant because the only evidence linking Morales to weapons was one year old, there was no evidence that Morales had threatened anyone with weapons, Morales had already been arrested when the entry occurred, and there was no evidence that Granados had been in contact with the CI or his family. These facts do not detract from the task force's reasonable belief that Morales may have left weapons in his room, that Morales' associate may have known the location of the CI's family, and that Morales' associate may use his own weapons against officers, civilians, or the CI's family after realizing that Morales had been arrested after a meeting with the CI.

The warrantless entry into Granados' hotel room was also necessary to prevent him from fleeing. The Eighth Circuit has consistently recognized that "the timing of undercover drug transactions makes the simultaneous arrest of all conspirators a matter of special urgency." Padilla, 869 F.3d at 379. This is because the failure of the arrestee to communicate with his co-conspirators after a planned drug transaction or to return with the drugs or money can signal to the co-conspirators that the deal has gone sour. Id. at 379-80; see also Clement, 854 F.2d at 1119-20 (agents reasonably inferred that the occupants of a hotel room expected their associates to return with the proceeds of an earlier drug sale and the nonappearance of the associates might warn the

13

occupants that the sale had failed).  In this case, the agents could reasonably infer that Morales' failure to return to the hotel room with the money within a reasonable period of time would alert the person in the room that something had gone wrong with the transaction.  Therefore, they were justified in entering the hotel room to prevent Granados from fleeing.  See Marin-Cifuentes, 866 F.2d at 992 (finding that it would have been foolhardy of officers not to arrest known suspect immediately after arrest of associates involved in controlled sale to avoid the chance of flight).

Because probable cause and exigent circumstances supported the warrantless entry into Granados' hotel room and his arrest, the court adopts the recommendation of the magistrate judge that the entry and arrest did not violate the Fourth Amendment.  The court also adopts the recommendation of the magistrate judge that the unannounced entry did not violate the knock and announce requirement imposed by 18 U.S.C. § 3109 because exigent circumstances justified the entry.  See Padilla, 869 F.2d at 380 n.4 (explaining that the exigent circumstances exception applies to § 3109 because the exception existed at common law).  Finally, the court finds that the evidence obtained through the search of the hotel room, the search of the Expedition, and the questioning of Granados is not inadmissible as fruit of the poisonous tree because the entry and arrest were not unlawful.

14

### III.    Search of Hotel Room and Vehicle

Granados objects to the magistrate judge's recommendation that he voluntarily consented to the search of Room 250 and the Expedition.  After members of the task force entered Granados' hotel room, he was handcuffed and escorted to a squad car.  Van Iten informed him that he was under arrest and requested consent to search the hotel room and Expedition.  Granados signed a consent to search form and initialed next to the areas to be searched. The form also contained typewritten statements that the signatory had been advised of his right to refuse consent, gave permission voluntarily, and authorized agents to take any items which they determined to be related to their investigation.  Granados did not initial next to these statements, and Van Iten does not remember whether he went over each line individually with Granados.  Van Iten did not tell Granados it would be beneficial if he gave consent nor did he promise leniency if he did so, and he does not recall if he told Granados he would notify the prosecutor of his cooperation.  Granados was handcuffed throughout the conversation, except when he signed the consent form.  He spoke in English, did not appear to have any problems understanding Van Iten, and did not appear to be under the influence of drugs. At no point did Granados indicate that he did not want agents to search his hotel room or vehicle.  Officers searched both locations without a search warrant.

15

Under the Fourth Amendment, a warrantless search is presumptively unreasonable unless one of the well-established exceptions applies.  United States v. Sanders, 424 F.3d 768, 773 (8th Cir. 2005).  Knowing and voluntary consent to a search is one of these exceptions.  Id.  "The test applied to determine if consent is free and voluntary is whether, in light of the totality of the circumstances, consent was given without coercion, express or implied." United States v. Escobar, 389 F.3d 781, 784-85 (8th Cir. 2004) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)).  The government must prove voluntariness by a preponderance of the evidence.  United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990).

In determining whether consent was freely and voluntarily given, courts consider the following facts about the defendant: (1) age, (2) general intelligence and education, (3) level of intoxication, (4) whether he was informed of his right to withhold consent or of his Miranda rights, and (5) experience with prior arrests that made him aware of the legal rights of suspected criminals.  Id. at 381.  Courts also consider the environment in which consent was given by determining whether the defendant:  (1) was detained and questioned for a long or short time, (2) was threatened, physically intimidated, or punished by the police, (3) relied upon promises or misrepresentations made by the police, (4) was in custody or under arrest, (5) was in a public or secluded place, or (6) objected to the search or stood by silently while the search occurred.  Id. No single factor is dispositive.  Escobar, 389 F.3d at 785.

16

Here, the court finds that under the totality of the circumstances, Granados voluntarily consented to the search of his hotel room and the vehicle. He was 29 years old and able to understand and speak English. Although, as Granados argues, he may have smoked marijuana earlier in the day, he did not appear to be intoxicated and the evidence clearly did not "suggest that he was so intoxicated that he was not competent to understand the nature of his acts." See United States v. Willie, 462 F.3d 892, 896 (8th Cir. 2006) (setting out standard for finding that intoxication rendered consent involuntary) (internal quotation omitted). Granados was only detained in the squad car for a few minutes, and there is no evidence that he was questioned before he signed the consent form. Granados was neither threatened or abused by officers nor promised leniency or better treatment if he consented. Although he was under arrest when he signed the consent form, the consent occurred in a public place.[2] Finally, at no point did Granados state that he wished that the hotel room or vehicle not be searched.

Granados objects to the magistrate judge's finding that he was aware of his constitutional rights and understood his right to refuse to give consent on the grounds that Van Iten testified that he was unsure whether he went over the advisement of rights on the consent form, Granados may have been under

_____

[2]Contrary to Granados' argument that a police car is not a public place, the Eighth Circuit has found that a defendant who gave consent while handcuffed in a police car in a motel parking lot was in a public place. Willie, 462 F.3d at 897.

the influence of marijuana, and Granados had not been advised of his <u>Miranda</u> rights.  It is unnecessary to determine whether Granados was adequately advised of his rights because although <u>Miranda</u> warnings can lessen the probability that a defendant was subtly coerced, they are not required for consent to a search to be voluntary.  <u>Escobar,</u> 389 F.3d at 786.  In this case, the factors suggesting that Granados gave consent free of coercion outweigh the fact that he may not have been advised of his right to refuse consent.  <u>See Willie</u>, 462 F.3d at 896- 97(finding that defendant gave consent voluntarily even where he was under arrest, handcuffed, sitting in a patrol car, under the influence of methamphetamine, and had not received <u>Miranda</u> warnings because there was no evidence of police intimidation or misrepresentation or of an environment that would give rise to a presumption of involuntary choice).  The court adopts the magistrate judge's recommendation that Granados consented to the search of the hotel room and Expedition freely and voluntarily.

**IV.     Statements**

Granados objects to the magistrate judge's recommendation that the statements he made in the Hughes County Jail later on June 14, 2008, not be suppressed.  The magistrate judge found that the statements were not the fruit of an unlawful arrest because probable cause and exigent circumstances justified the arrest, and that even if the arrest were unlawful, the statements would be admissible under <u>New York v. Harris</u>, 495 U.S. 14 (1990).  The court

18

has found that the warrantless entry of Room 250 and arrest of Granados did not violate the Fourth Amendment, so the statements he made later in the day were not the fruit of the poisonous tree. The statements are admissible regardless of the <u>Harris</u> rule. Accordingly, the court adopts the magistrate judge's recommendation that Granados' statements in the Hughes County Jail not be suppressed.

**V.      Photographic Lineup Identification**

Finally, Granados objects to the magistrate judge's finding that the photographic lineup presented to the CI did not violate Granados' due process rights. Van Iten and Baldwin conducted a photo lineup on June 16, 2008. An array of six photographs was presented to the CI to see if he recognized any of the individuals as people who had delivered marijuana or money to him. The CI said that he did not receive money or marijuana, but that the person in photo number 5 could have been there when the CI gave money to Morales' brother. The CI wrote "could've been" next to photo number 5, which pictured Granados.

The admissibility of a pretrial identification from a photographic array is determined under a two-part inquiry. <u>Schawitsch v. Burt</u>, 491 F.3d 798, 802 (8th Cir. 2007) (quoting <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)). "The first step is to determine whether the array was impermissibly suggestive. If found so, the second inquiry is whether

under the totality of the circumstances the array created a substantial risk of misidentification at trial." Id.  An array is not unnecessarily suggestive where there are no differences in appearance tending to isolate the defendant's photograph.  Id.; see also United States v. Boston, 494 F.3d 660, 666 (8th Cir. 2007) (array containing pictures of six individuals with similar physical characteristics and no other identifying information not impermissibly suggestive).

Here, Granados asserts without further explanation that his photograph was unduly and impermissibly suggestive as compared to the other five photographs in the array.  The court has examined a copy of the photo array, which contains head shots of six men with similar skin tone and dark hair. Some of the men have facial hair.  The array contains no identifying information.  Because there are no differences in appearance that tend to isolate Granados, the array is not impermissibly suggestive.  See Schawitsch, 491 F.3d at 803 ("Reasonable variations in hair length and facial hair are not impermissibly suggestive, especially as they can vary on any given person at different times.").  Moreover, there is no indication that the officers conducting the photographic lineup made any statements or gestures to encourage the CI to select the photo of Granados.  See Boston, 494 F.3d at 666 (array not unduly suggestive where officer did not make any suggestive sounds or gestures during the photographic lineup).  Because the photographic lineup

was not impermissibly suggestive, the magistrate judge did not err in finding it unnecessary to determine whether the lineup created a substantial likelihood of irreparable misidentification.

Accordingly, it is hereby

ORDERED that the court adopts the Report and Recommendation on Defendant's Motion to Suppress of Magistrate Judge Mark A. Moreno (Docket 49) as supplemented herein and, therefore, defendant's motion to suppress (Docket 39) is denied.

Dated November 4, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE